UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MERCE R. BAROCIO,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 21-CV-092-RAW-JAR |
| | ) |
| **MIKE BOLT, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## OPINION AND ORDER

Plaintiff Merce Barocio, a state prisoner appearing pro se[1] and proceeding *in forma pauperis*, brings this federal civil rights action pursuant to 42 U.S.C. § 1983. Defendants have moved to dismiss the Complaint. *See* Dkt. 50. Plaintiff has filed a response (Dkt. 53), to which Defendants have replied (Dkt. 56). Plaintiff filed an additional document on January 13, 2023, which the Court construes as an unauthorized supplemental brief (Dkt. 58).[2] For the following reasons, the Court GRANTS the Motion.

I.  BACKGROUND

Plaintiff's claims arise from events alleged to have occurred in November 2019, at Mack Alford Correctional Center in Stringtown, Oklahoma. Dkt. 2, at 5.[3] Plaintiff names as Defendants Warden Mike Bolt, Assistant Warden John Montgomery, Lieutenant James Billy, and Corrections

---

[1] Because Plaintiff appears without counsel, the Court must liberally construe his pleadings. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the rule of liberal construction neither requires nor permits the Court to act as an advocate on his behalf by crafting legal arguments or scouring the record for facts to support his claims. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

[2] Though Plaintiff's supplemental brief was unauthorized under Local Civil Rule 7.1(e), the Court has nonetheless considered the arguments presented therein.

[3] The Court's citations refer to the CM/ECF header pagination.

Officer Francisco Munoz-Vasquez[4] in their individual and official capacities. *Id.* at 1, 3-4, 7; Dkt. 50, at 11.

Plaintiff alleges that in the early morning of November 21, 2019, he experienced chest pains and was driven to a hospital by Defendant Vasquez. Dkt. 2, at 11. Plaintiff asserts that Defendant Vasquez became upset when Plaintiff refused to take a urine test and that he drove Plaintiff to and from the hospital at reckless speeds reaching 90 to 100 miles per hour. *Id.* at 11-12. Upon returning to the prison holding room, Defendant Vasquez left Plaintiff in shackles for over an hour. *Id.* at 12. Plaintiff alleges that, when escorting Plaintiff back to segregation in shackles, Defendant Vasquez "tried to slam [him] into [a] door," pulled him "very fast and aggressive[ly]" by his left arm, and repeatedly stepped on his left foot. *Id.* at 13-14. Plaintiff alleges that he "tried to tell" Defendant Vasquez that his ankles and wrists were hurting but Defendant Vasquez did not slow down. *Id.* Plaintiff contends that he sustained bruises on his arm and cuts from the shackles on his ankles and wrist. *Id.* at 14. Plaintiff additionally contends that he was "denied showers" on November 29, 2019. *Id.* at 16.

Defendants assert that Plaintiff's claims are subject to dismissal for failure to state a claim upon which relief can be granted and for Plaintiff's failure to exhaust his administrative remedies prior to filing this action, in contravention of the Prison Litigation Reform Act. Dkt. 50, at 17-25.[5]

II.   FAILURE TO STATE A CLAIM

To survive a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

---

[4] The Court will refer to this defendant as Defendant Vasquez, in conformity with the Complaint. *See* Dkt. 2, at 3.

[5] Because the Court finds that Plaintiff's claims should be dismissed on these bases, the Court does not reach Defendants' alternative arguments for dismissal.

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In assessing a motion to dismiss, the Court must accept all well-pleaded allegations in the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff.  *See Twombly*, 550 U.S. at 555-56.  While the Court construes a pro se litigant's pleadings liberally, this liberal construction, "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall*, 935 F.2d at 1110.  The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997).

    a.  <u>Eighth Amendment Excessive Force Claim</u>

"[C]laims of excessive force involving convicted prisoners arise under the Eighth Amendment," which proscribes cruel and unusual punishment, including the "unnecessary and wanton infliction of pain." *Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014); *Ullery v. Bradley*, 949 F.3d 1282, 1290 (10th Cir. 2020) (internal quotation marks omitted).  The test for an Eighth Amendment violation involves two components: "(1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018) (internal quotation marks omitted).

Plaintiff's allegations fail to satisfy the objective prong on an Eighth Amendment excessive force claim.  The Supreme Court has explained that not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *see Johnson v. Glick*, 481 F.2d. 1028, 1033 (1973) ("Not every push or shove, even if it may later seem

unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."). Specifically, "*de minimis* uses of physical force" do not violate the Eighth Amendment's prohibition on cruel and unusual punishments, "provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (internal quotation marks omitted). Here, the alleged pushing and aggressive pulling constitute *de minimis* use of physical force and are not of a nature so repugnant as to constitute cruel and unusual punishment. *See Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." (internal quotation marks omitted)); *Marshall v. Milyard*, 415 F. App'x 850, 853 (10th Cir. 2011) (finding alleged use of force *de minimis* and not repugnant to conscience of mankind where plaintiff alleged prison official "grabbed [his] arm and dug his fingernails into it, resulting in an injury"); *see also Gee v. Pacheco*, 627 F.3d 1178, 1193 (10th Cir. 2010) ("[T]he 'assault' could have been justified by simply a need for him to move faster."). Thus, Plaintiff's allegations of excessive force fail to state a plausible claim for relief.

      b. <u>Eighth Amendment Conditions of Confinement Claims</u>

Plaintiff additionally alleges that Defendant Vasquez drove at reckless speeds to and from the hospital, that he left Plaintiff in shackles for over an hour, and that Plaintiff was denied showers on November 29, 2019. Plaintiff fails to articulate whether these factual allegations are intended to support discrete claims for relief, and the Court is not required to "construct a legal theory on plaintiff's behalf." *Whitney*, 113 F.3d at 1175. However, to the extent that the factual allegations may be liberally construed as raising additional claims for relief, the Court determines that they fail to state cognizable claims of constitutional violations.

Plaintiff's allegations are best construed as claims of inadequate conditions of confinement under the Eighth Amendment. *See Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) ("The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm."). Like Eighth Amendment claims of excessive force, conditions-of-confinement claims have both an objective and a subjective component. *See Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001). "The objective component requires conditions sufficiently serious so as to deprive inmates of the minimal civilized measure of life's necessities" or to "constitute a substantial risk of serious harm." *Id.* (internal quotation marks omitted). "The subjective component requires that a defendant prison official have a culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety." *Id.*

First, Plaintiff's bare allegation that Defendant Vasquez drove at reckless speeds is insufficient to demonstrate an excessive risk to Plaintiff's safety within the meaning of the Eighth Amendment. While the speeding may have posed a degree or risk to Plaintiff, there is no indication that the risk fell within the parameters of the Eighth Amendment or that Defendant Vasquez's conduct exceeded ordinary negligence. *See Dexter v. Ford Motor Co.*, 92 F. App'x 637, 641 (10th Cir. 2004) (finding failure to seatbelt inmate did not pose an excessive risk to inmate's safety); *Bassett v. Klinker*, No. 13-cv-03391-MJW, 2014 WL 5444086, at *2-3 (D. Colo. Oct. 27, 2014) (distinguishing Eighth Amendment claims involving reckless driving from those with exacerbating factors such as driver intoxication). "Eighth Amendment liability requires more than ordinary lack

5

of due care for the prisoner's interests or safety." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (internal quotation marks omitted).

Second, Plaintiff's allegation that he was left in shackles for over an hour fails to demonstrate an extreme deprivation of life's necessities or a substantial risk of serious harm. "[R]outine discomfort is part of the penalty that criminal offenders pay for their offenses against society." *Hudson*, 503 U.S. at 9 (internal quotation marks omitted). It is "only those deprivations denying the minimal civilized measure of life's necessities [that] are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* (internal quotation marks omitted). Here, the duration of Plaintiff's restraint was short, and Plaintiff does not allege that he suffered any specific deprivation during that time. *See Chrisco v. Raemisch*, No. 17-cv-01799-MEH, 2018 WL 3611519, at *5 (D. Colo. July 27, 2018) ("Although spending twenty-four hours restrained at all extremities with no opportunity to be medically cleared for release would certainly be uncomfortable, 'a prisoner must show that conditions were more than uncomfortable, and instead rose to the level of "conditions posing a substantial risk of serious harm" to inmate health or safety.'" (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 973 (10th Cir. 2001)).

Finally, the denial of a shower for one day does not constitute an "extreme" deprivation under the Eighth Amendment. *Hudson*, 503 U.S. at 9. While substantial deprivations of sanitary conditions may support a claim for constitutionally inhumane conditions, "minor deprivations suffered for short periods" do not. *DeSpain*, 264 F.3d at 974; *see Bouziden v. Hawk*, No. CIV-07-1047-R, 2008 WL 4619803, at *5 (W.D. Okla. Oct. 16, 2008) (finding allegation that inmate "went five to six days between showers" insufficient to demonstrate "inherently unsafe" of "inhuman" conditions under the Eighth Amendment).

The Court therefore finds that Plaintiff has failed to state a claim for unconstitutional conditions of confinement.

III.     FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

As an alternative basis for dismissal, Defendants raise the affirmative defense that Plaintiff has failed to exhaust his administrative remedies.  Dkt. 50, at 17-21.  The Court agrees that Plaintiff's claims also are subject to dismissal on this basis.

The Prison Litigation Reform Act (PLRA) prescribes that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  "[T]he PLRA exhaustion requirement requires proper exhaustion," including "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006).  The prisoner must use "all steps that the agency holds out, and [do] so *properly*." *Id.* at 90 (internal quotation marks omitted). Under the PLRA, "[a]n inmate who begins the grievance process but does not complete it is barred from pursuing [his] § 1983 claim" in federal court. *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (internal quotation marks omitted).

The PLRA's exhaustion requirement, however, extends only to administrative remedies that are "available." *See May v. Segovia*, 929 F.3d 1223, 1234 (2019).  "Administrative remedies are deemed unavailable if, among other things, 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* Further, "the failure to respond to a grievance within the time limits contained in the grievance

policy renders an administrative remedy unavailable." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

The grievance procedure utilized by the Mack Alford Correctional Center requires an inmate initially to attempt informal resolution of his or her complaint by speaking with the affected staff member within three days of the incident. Dkt. 48-2, at 7. If the conversation does not resolve the matter, the inmate must submit a written Request to Staff within seven days of the incident. *Id.* If the inmate is dissatisfied with the response received from the Request to Staff, he or she may file a formal grievance with the appropriate reviewing authority within fifteen days. *Id.* at 9. Finally, the inmate may appeal the reviewing authority's response to the formal grievance within fifteen days of its receipt. *Id.* at 13. Under the policy, Requests to Staff, formal grievances, and grievance appeals must adhere to certain requirements as to form and substance. *Id.* at 6-15.

In his Complaint, Plaintiff alleges that he "tried to exhaust administrat[ive] remedies" by filing several Requests to Staff, but that he was unable to properly complete the grievance process because his requests for legal assistance from the prison's law library were denied. Dkt. 2, at 10, 17. Plaintiff's allegation that he was denied legal assistance to properly navigate the grievance process, however, does not render the administrative remedy unavailable or otherwise excuse his failure to effectuate proper exhaustion. Though the assistance may have aided Plaintiff, the administrative remedy was nonetheless "capable of use for the accomplishment of [its] purpose" without such assistance. *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011) (internal quotation marks omitted).

Plaintiff also alleges that "some" of his Requests to Staff were "not answered." Dkt. 2, at 10. The record reflects instances in which Plaintiff's grievance submissions were returned unanswered, but each was the result of Plaintiff's noncompliance with the prison's grievance

8

policy. *See* Dkt. 48-7, at 8 (appeal returned "unanswered" for noncompliance with verification requirement); *id.* at 2, 5 (notices of grievance deficiencies); Dkt. 48-6, at 3 (Request to Staff returned for noncompliance with requirement that each request contain only one issue); Dkt. 48-2, at 10 (grievance policy provision prescribing that a "grievance may not be answered" if inmate fails to follow policy instructions).[6] Accordingly, the lack of substantive response was due to Plaintiff's failure to properly adhere to the grievance policy, not an effort to thwart Plaintiff's use of the policy. Further, the prison's grievance policy provides a ten-day cure period for improperly submitted grievances, as well as a mechanism by which inmates can assert a lack of response to the Administrative Review Authority. *See* Dkt. 48-2, at 9-13; *Jernigan*, 304 F.3d at 1032-33 (finding the failure to respond to a grievance did not render administrative remedy unavailable where prisoner had ten days to cure deficiency and grievance policy had mechanism to address the lack of response). For these reasons, the Court concludes that administrative remedies were available to Plaintiff and that he failed to properly exhaust them.

IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (Dkt. 50) is GRANTED. Plaintiff's Complaint (Dkt. 2) is DISMISSED without prejudice.

IT IS SO ORDERED this 13th day of February, 2023.

Ronald A. White
United States District Judge
Eastern District of Oklahoma

---

[6] The Court references the Special Report submitted by Defendants on May 13, 2022. Though a *Martinez* report may not be used to resolve a factual dispute, it "may serve as the basis for a dismissal" if uncontroverted. *Gallagher v. Shelton*, 587 F.3d 1063, 1067 n.7 (10th Cir. 2009). Here, Plaintiff's factual allegation that he did not receive responses to certain grievance submissions does not controvert the *Martinez* report, which merely clarifies the basis for the lack of response. *See Hall*, 935 F.2d at 1112 (explaining that Courts may use a *Martinez* report to "identify and clarify the issues plaintiff raises in his complaint").

9